**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SMITH BROTHERS FINANCIAL, LLC, | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 3:23-cv-1604 (OAW) |
| v. | ) | |
| | ) | |
| WOODBURY FINANCIAL SERVICES, | ) | |
| INC., | ) | |
| *Defendant*. | ) | |
| | ) | |

<u>**RULING ON MOTION FOR TEMPORARY RESTRAINING ORDER AND**</u>
<u>**PRELIMINARY INJUNCTION**</u>

**THIS ACTION** is before the court upon Plaintiff's *ex parte* motions for a temporary restraining order and a preliminary injunction ("Motion for TRO" or the "Motion").  ECF No. 2.  For the reasons hereinafter set forth, Plaintiff's motion is **DENIED**.


I.   <u>**BACKGROUND**</u>[1]

Plaintiff Smith Brothers Financial, LLC is an investment advisory firm registered with the S.E.C.  *See* Mem. of Law in Supp. of Mot. for TRO & Prelim. Inj. 1, ECF No. 3 [hereinafter "Mot. for TRO"].  Defendant Woodbury Financial Services, Inc. is a "FINRA-registered broker-dealer and SEC-registered investment advisory firm."  *Id.*

Plaintiff alleges that "in or around 2013," it entered a business relationship with Defendant Woodbury Financial Services, in which Defendant would provide brokerage services for Plaintiff.  *See id.* at 1  This relationship ended when, on or about October 17,

---

[1] As the motion for temporary restraining order was filed *ex parte*, the background section reflects the factual allegations raised by Plaintiff in its complaint, *see* ECF No. 1, and its motion for temporary restraining order, *see* ECF No. 3.

2022, Plaintiffs entered into business relationship with LPL Financial, LLC instead. *See id.* at 2. Under this new working relationship, LPL Financial would provide the brokerage services that Defendant had previously provided. *See id.*

Plaintiff claims that, since this transition, Defendant "has transmitted, and continues to transmit, false and misleading information, and solicitations," to Plaintiff's clients. *See id.* The Motion cites to two kinds of transmissions in particular: one in which Defendant allegedly has suggested that Stephen Michaels, a principal at Smith Brothers, "remains affiliated with Woodbury"; and another in which Defendant solicits Plaintiff's clients for "sensitive and confidential information." *Id.*; *see* Ex. A, ECF No. 1-1 (letter to Plaintiff's client requesting personally identifiable information signed by Defendant "on behalf of Stephen Michaels").

Almost a year later, on October 3, 2023, counsel for Plaintiff demanded that Defendants cease spreading the misleading information. Despite two additional attempts on October 20, 2023, and December 5, 2023, Defendant has not "provided assurances that it will stop disseminating" false information. *See* Mot for TRO at 2–3. Moreover, Defendant has not confirmed to which of Plaintiff's clients it transmitted such information. *See id.*

On December 8, 2023, Plaintiff filed the underlying claim to this action, as well as this instant motion for a temporary restraining order and preliminary injunction.

## II.   **LEGAL STANDARD**

"The traditional standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a

preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).  In order to obtain a preliminary injunction, a party must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, L.L.C. v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004).

## III.   **DISCUSSION**

The court first starts by analyzing whether Plaintiff adequately has demonstrated irreparable harm in the absence of the injunction.

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari*, 295 F.3d 206, 213 (2d Cir. 2002) (internal quotations omitted).  "To satisfy the irreparable harm requirement, [a plaintiff] must demonstrate that absent a preliminary injunction, they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999)).  "If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (citing *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991)).  And the United States Court of Appeals for the Second Circuit previously has

ruled that irreparable harm may exist "through loss of reputation, good will, and business opportunities." *Id.*

Plaintiff has alleged that Defendant not only has continued to disseminate allegedly false information, but also that Defendant has yet to confirm which of Plaintiff's clients has received such information. *See* Mot for TRO at 2–3. Plaintiff's alleged harm, in its own words, is that Defendant's conduct "continues to cause confusion and alarm among Smith Brothers' Clients; and it continues to harm Smith Brothers' stellar reputation among these clients." *Id.* at 4. While at first glance, there seems to be the kind of irreparable harm found by the *Register.com* Court, Plaintiff's argument is undermined by several factors, the first of which is the timing related to when the instant complaint was filed.

Plaintiff alleges that Defendant has been transmitting false information "since" Plaintiff entered into a business relationship with LPL Financial. *See* Mot. for TRO 2. This wording leaves it is unclear whether Plaintiff's claim is that Defendant's misconduct began *immediately* (or even shortly) thereafter, or simply whether it began *sometime* after the transition to a different broker-dealer. The complaint offers no clarity, in that it uses identical wording. *See* Compl. 2 at ¶ 8, ECF No. 1.

If Plaintiff's wording means to allege that the claimed misconduct has been underway *ever since* Plaintiff initiated its business relationship with LPL Financial, then Plaintiff allegedly has been suffering irreparable harm since October 16, 2022. *See* Mot. for TRO 2. However, as the complaint and its accompanying motion for a temporary restraining order were filed on December 8, 2023, that would mean that this action was initiated more than a year after the claimed harm allegedly began. *See* Compl. 1. Even the earliest asserted recourse against this harm occurred on October 3, 2023, when

Plaintiff's counsel demanded that Defendant cease its conduct.  *See* Mot. for TRO 2. Such delay in action from Plaintiff, both in contacting Defendant and initiating this action, suggests that Plaintiff is not facing any imminent, irreparable harm, but rather one that could be remedied upon the final adjudication of the underlying action.  *See Perez v. Bridgeport Health Care Ctr., Inc.*, No.3:16-cv-1519(AVC), 2018 WL 10247402, at *4 (D. Conn. Mar. 6, 2018).  After all, the "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  *Tough Traveler, Ltd. v. Outbound Prods*, 60 F.3d 964, 968 (2d Cir. 1995) (citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).  This is especially true where neither the complaint nor the TRO Motion explains the reason for this delay.  *See id.* (ruling that certain delays may be acceptable upon ample explanation).

Even if the court were to presume that Plaintiff filed this complaint as soon as reasonably was possible after discovering Defendant's conduct, the complaint nevertheless lacks evidence to suggest that Plaintiff has suffered any harm.  Aside from Plaintiff's conclusory allegations that it continues to suffer harm to its reputation and good will, there is little in the record that supports such a finding.  For example, even where Plaintiff attaches certain email conversations to the complaint, *see* Ex. B, ECF No. 1-1, persons who presumably are Plaintiff's clients simply appear to ask Stephen Michaels about communication from Defendant.  *See generally id.*  Not a single one of those emails suggests that the clients are questioning whether to continue the business relationship, let alone that they outright seek to terminate any such relationship.  *See* Ex. B, ECF No. 1-1 (suggesting only confusion among Plaintiff's clients).  This is clearly distinguishable from the nature and degree of potential harm associated with customers who might feel

betrayed or compromised by a business that is unable to honor an agreement, as might be caused by a distributor or a supplier that fails to deliver contract goods upon which a Plaintiff's customers might rely.  *See, e.g., People's Club Int'l, Inc. v. People's Club of Nigeria Int'l—N.Y. Branch, Inc.*, No. 3.18-cv-1144(VLB), 2018 WL 3581697, *2 (D. Conn. July 25, 2018).  Accordingly, the court finds the emails to lack sufficient evidence of the claimed harm.  And where a plaintiff fails to adduce little more than "conclusory assertions" that it would be unable to add to its customer base, or that it would be able to reestablish relationships with affected clients, the United States Court of Appeals for the Second Circuit has advised against issuance of injunctive relief.  *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 673 (2d Cir. 2023); *see Coastal Distrib., LLC v. Town of Babylon*, No. 05 CV 2032 JS ETB, 2006 WL 270252, at * 3 (E.D.N.Y. Jan. 31, 2006) (finding irreparable harm where the moving party demonstrated loss of potential clients and the likelihood that the business would shut down absent the court's intervention).

Therefore, while Plaintiff alleges the type of harm which, under certain circumstances, may warrant immediate injunctive relief, the facts of this case discourage this court's present intervention.  As such, the court finds that Plaintiff has not satisfied this prerequisite to judicial action.

The plaintiff having failed to satisfy the first prong, the court need not assess the plaintiff's likelihood of success in this case.

**IV.**     **CONCLUSION**

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:   Plaintiff's

motion for temporary restraining order and preliminary injunction is DENIED.[2]

IT IS SO ORDERED in Hartford, Connecticut, this 3rd day of January, 2024.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[2] Because the court considers applications for a preliminary injunction under "the traditional standards" which govern applications for temporary restraining orders, Plaintiff's motion for preliminary injunction must be denied for the reasons outlined above.  *See Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).